**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MARTESA LEE,

                Plaintiff,

        v.

CITY OF CHICAGO, a municipal
corporation, Chicago Police Officer
RAYMOND J. HARAN, and Chicago Police
Sergeant WILLIAM J. SPYKER,

                Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 20-CV-1508

Hon, John J. Tharp, Jr.

Mag. Judge Jeffrey Cummings

*Jury Trial Demanded.*

**FIRST AMENDED COMPLAINT AT LAW**

NOW COMES Plaintiff MARTESA LEE, complaining of the Defendants, CITY OF CHICAGO, a municipal corporation; Chicago Police Officer RAYMOND J. HARAN, and Chicago Police Sergeant WILLIAM J. SPYKER,  and states the following:

**JURSDICTION AND VENUE**

1.      This action arises under the Constitution of the United States, particularly the First, Fourth and Fourteenth Amendments to the Constitution of the United States, under the laws of the United States, particularly the Civil Rights Act, Title 42 of the United States Code, Sections 1983 and 1988, and under the laws of the State of Illinois.

2.      The jurisdiction of this Court is invoked under the provisions of Title 28 of the United States Code, Sections 1331 and 1343.  Plaintiff also invokes the supplemental jurisdiction of this Court pursuant to Title 28 of the United States Code, Section 1367.

3.      Venue is proper in the United States District Court for the Northern District of Illinois under Title 28 of the United States Code, Section 1391(b)(2), as the events complained of occurred within this district.

**PARTIES**

4.      At all times relevant herein, Plaintiff MARTESA LEE (hereinafter "Martesa") was a resident of the CITY OF CHICAGO, County of Cook, State of Illinois, and a citizen of the State of Illinois.

5.      At all times relevant herein, Defendant RAYMOND J. HARAN (hereinafter "Defendant Haran") was a sworn police officer employed by Defendant CITY OF CHICAGO, and was acting within the scope of his agency, service and/or employment with the CITY OF CHICAGO, and was acting under color of the statutes, ordinances, regulations, customs, and usages of the State of Illinois.

6.      At all times relevant herein, Defendant WILLIAM J. SPYKER (hereinafter "Defendant Spyker") was a sworn police officer/sergeant employed by Defendant CITY OF CHICAGO, and was acting within the scope of his agency, service and/or employment with the CITY OF CHICAGO, and was acting under color of the statutes, ordinances, regulations, customs, and usages of the State of Illinois.

7.      Defendant CITY OF CHICAGO is a municipal corporation organized, existing and doing business under the laws of the State of Illinois, and at all times relevant provided police services in the CITY OF CHICAGO through the Chicago Police Department.

8.      At all times relevant herein, the Defendant, CITY OF CHICAGO, employed a force of police officers who served through the Chicago Police Department and who

were assigned to work within various geographical areas within the CITY OF CHICAGO.

## FACTS

9.     On or about February 4, 2020, at or around 2:00 p.m., Martesa was employed and working on duty as a supervisor for the Chicago Transit Authority ("CTA").  She was wearing a blue CTA coat with the CTA logo displayed prominently, and a hat with a metal badge on the front displaying the words "Supervisor Chicago Transit Authority".

10.     On or about February 4, 2020, at or around 2:00 p.m., Martesa was the assigned Person In Charge ("PIC") on the scene of a stabbing that had taken place at the Jackson station of the CTA's Red Line.  One of her responsibilities as the PIC was to determine whether trains should stop at the station as usual, or bypass the station in the aftermath of the stabbing.

11.     As she walked on the station platform, Martesa observed police officers standing around, including Defendant Haran.  As Martesa was walking on the platform, communicating on her radio, Defendant Haran approached her from behind and stated, "Ma'am, ma'am.  Come out here."  He did not explain what he meant by "come out here".

12.     Martesa, still communicating on her radio, signaled to HARAN that she was speaking with someone.  HARAN stated, "You need to come out of the crime scene, Ma'am."

13.     HARAN did not clarify where the crime scene started or ended.

14.     HARAN did not tell Martesa where he wanted her to go.

15.     At this time, there was no crime scene tape or other physical markings signifying a crime scene, let alone indicating the boundaries of the purported crime scene.

16.     Moments earlier, Martesa had walked in the same location right past HARAN with no incident. HARAN had said nothing.

17.     In fact, only moments earlier, HARAN, a patrol officer, had unilaterally decided where the crime scene should be.

18.     Martesa had no way of knowing where she should go to "come out of the crime scene."

19.     Defendant HARAN stated to Martesa, "Please get out of the crime scene." As he said this, Defendant HARAN grabbed Martesa by the elbow and forcefully led her toward the edge of the platform near the tracks.

20.     Martesa turned around and advised Defendant HARAN not to put his hands on her.  Defendant HARAN responded, "Then don't go through the crime scene again."

21.     Once again, HARAN failed to inform Martesa where the crime scene began and ended, and how exactly she should avoid "go[ing] into the crime scene again."

22.     At this time, there was still no crime scene tape or other physical markings signifying a crime scene, let alone indicating the boundaries of the purported crime scene.

23.     Defendant HARAN never threatened to arrest Martesa, nor did he attempt to initiate an arrest.

24.     Martesa walked away and continued doing her job.

25.     A few minutes later, Martesa approached Defendant SPYKER, and advised him that she had an issue with one of his officers.

26.     Martesa stated that Defendant HARAN had grabbed and pushed her.

27.     SPYKER asked Martesa if she wanted him to ask HARAN why he grabbed and pushed her.

28.     Martesa stated to SPYKER, "I want something to be done."

29.     Upon hearing that Martesa wanted to pursue a complaint against Defendant HARAN, SPYKER said, "If he tells me that you were obstructing the crime scene, we're gonna arrest you."

30.     Martesa, in disbelief, stated, "You're not gonna arrest me for doing my job, this is my job."

31.     SPYKER responded, "Yes we are…that's the way it's gonna go, if you wanna complain."

32.     After further discussion, SPYKER asked Martesa, "Are you the supervisor?"  She stated that she was. SPYKER asked her, "Is it worth it to you, [is it] that serious, for this?"

33.     In other words, SPYKER was asking Martesa if it was worth getting arrested in order to pursue her complaint against Defendant HARAN.

34.     Defendant SPYKER indicated to Defendant HARAN to come over. Defendant HARAN walked right through the crime scene – now identified with yellow tape – to approach Martesa and SPYKER.

35.     After Defendant HARAN had come over, Martesa stated, "It's all on camera, and I'm done with it now."

36.     Defendant SPYKER asked her, "Are we done with this?" Martesa responded, "No, *I'm* not done with it, y'all could be done with it."

37.     SPYKER asked Martesa once again, "You're not done with it?" Martesa responded, "Oh, no I'm not." Upon hearing this, SPYKER stated to HARAN, "Do you wanna have her arrested for obstructing our crime scene?"

38.     Moments later, SPYKER ordered HARAN to arrest Martesa.

39.     HARAN placed Martesa in handcuffs behind her back.

40.     Neither SPYKER, HARAN, nor any other officer informed Martesa of her rights.

41.     Martesa was forced to stand on the train platform handcuffed for approximately eight minutes, in front of passengers, her colleagues, and television cameras.

42.     Eventually, Martesa was released.  She was never charged with a crime.

43.     That evening, Martesa saw herself on television, handcuffed at her place of business like a criminal.

44.     On information and belief, neither SPYKER, HARAN, nor any other officer ever completed an arrest report, which would have required that the officer articulate probable cause for the arrest.

45.     A subsequent report approved by Defendant SPYKER described the incident as follows:

   WHILE ESTABLISHING AND PROTECTING CRIME SCENE, PO HARAN
   #10571 OBSERVED CTA SUPERVISOR LEE WALK THROUGH AND

POTENTIALLY CONTAMINATE THE SCENE. PO HARAN ORDERED OFFENDER TO STOP WALKING THROUGH SCENE. OFFENDER DID NOT COMPLY AND PO HARAN ESCORTED OFFENDER FROM THE PERIMETER OF SCENE. OFFENDER BECAME IRRATE [sic] AND WAS MOMENTARILY DETAINED (ISR#5159104) GENERATED TO DOCUMENT THE STOP. NO CHARGES AT THIS TIME.

46.     There was no mention in the report – or, on information and belief, any report – that Martesa was only arrested after she made it clear she intended to pursue a complaint against Defendant HARAN.

47.     Later, Defendant HARAN stated to another officer, "Now she's gonna put a number on me", referring to a Complaint Register number.

## COUNT I – FEDERAL CLAIM
## VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHTS
## DEFENDANTS HARAN AND SPYKER

48.     Each paragraph of this Complaint is incorporated as if restated fully herein.

49.     Defendant SPYKER violated Martesa's First Amendment Rights by threatening her with the possibility of arrest if she persisted in lodging a complaint about the misconduct of Defendant HARAN.

50.     Defendants HARAN  SPYKER further violated Martesa's First Amendment rights by handcuffing and detaining her in retaliation for her statement that she wanted to file a complaint about the misconduct of Defendant Haran.

51.     As a proximate result of Defendants HARAN and SPYKER's misconduct, Martesa suffered severe pecuniary damages, including loss of liberty, humiliation, and physical and emotional pain and suffering.

WHEREFORE, the Plaintiff, MARTESA LEE, prays for judgment against Defendants HARAN and SPYKER in a fair and reasonable amount, including compensatory and

punitive damages, reasonable attorneys' fees, and for any additional relief this Court deems just and proper.

## COUNT II – FEDERAL CLAIM
## UNLAWFUL DETENTION
## DEFENDANTS HARAN AND SPYKER

52.     Each paragraph of this Complaint is incorporated as if restated fully herein.

53.     Defendants HARAN and SPYKER caused Martesa to be detained unreasonably and without probable cause, and without reasonable suspicion, resulting in her unlawful detention, in violation of the Fourth Amendment to the U.S. Constitution

54.     As a proximate cause of Defendants HARAN and SPYKER's misconduct, Martesa suffered severe pecuniary damages, including loss of liberty, humiliation, and physical and emotional pain and suffering.

WHEREFORE, the Plaintiff, MARTESA LEE, prays for judgment against Defendants HARAN and SPYKER in a fair and reasonable amount, including compensatory and punitive damages, reasonable attorney's fees, and for any additional relief this Court deems just and proper.

## COUNT III – FEDERAL CLAIM
## FALSE ARREST/ILLEGAL SEIZURE
## DEFENDANTS HARAN AND SPYKER

55.     Each paragraph of this Complaint is incorporated as if restated fully herein.

56.     Defendants HARAN and SPYKER arrested and/or seized Martesa without probable cause to believe she had committed a crime, in violation of the Fourth Amendment to the U.S. Constitution.

57.     At all times relevant, Defendants HARAN and SPYKER were acting under color of the statutes, ordinances, regulations, customs, and usages of the State of Illinois, and within the scope of their employment as Chicago police officers.

58.     As a proximate cause of Defendants HARAN and SPYKER's misconduct, Martesa suffered severe pecuniary damages, including loss of liberty, humiliation, and physical and emotional pain and suffering.

WHEREFORE, the Plaintiff, MARTESA LEE, prays for judgment against Defendants HARAN and SPYKER in a fair and reasonable amount, including compensatory and punitive damages, reasonable attorney's fees, and for any additional relief this Court deems just and proper.

## COUNT IV — STATE CLAIM
## FALSE IMPRISONMENT
## CITY OF CHICAGO

59.     Each paragraph of this Complaint is incorporated as if restated fully herein.

60.     In the manner described more fully above, Defendant City of Chicago, by its agents, Defendants HARAN and SPYKER, restrained Martesa without having reasonable grounds to believe that she committed an offense.

61.     The actions of Defendant City of Chicago, by and through its agents, were done intentionally, or with such reckless disregard for their natural consequences as to constitute the tort of false imprisonment under the laws and Constitution of the State of Illinois.

62.     The actions of Defendant City of Chicago, by and through its agents, constituted willful and wanton conduct.

63.     At all times relevant, Defendants HARAN and SPYKER were acting under color of the statutes, ordinances, regulations, customs, and usages of the State of Illinois, and within the scope of their employment as Chicago police officers.

64.     As a direct and proximate result of the Defendant's acts, Martesa suffered severe pecuniary damages, including loss of liberty, humiliation, physical and emotional pain and suffering, and loss of normal life.

WHEREFORE, the Plaintiff, MARTESA LEE, prays for judgment against Defendant City of Chicago in a fair and reasonable amount, and for any additional relief this Court deems just and proper.

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## CITY OF CHICAGO

65.     Each paragraph of this Complaint is incorporated as if restated fully herein.

66.     Defendant CITY OF CHICAGO, by and through its agents, Defendants HARAN and SPYKER, engaged in extreme and outrageous conduct against Martesa as set forth herein.

67.     By subjecting Martesa to such conduct, Defendant CITY OF CHICAGO, by and through its agents,  intended to inflict severe emotional distress upon her and knew that its conduct would cause her severe emotional distress.

68.      At all times relevant, Defendants HARAN and SPYKER were acting under color of the statutes, ordinances, regulations, customs, and usages of the State of Illinois, and within the scope of their employment as Chicago police officers.

69.     The actions of Defendant City of Chicago, by and through its agents, constituted willful and wanton conduct.

70.     As a direct and proximate result of Defendant's outrageous conduct, Martesa was injured, and suffered severe emotional distress.

WHEREFORE, the Plaintiff, MARTESA LEE, prays for judgment against Defendant City of Chicago in a fair and reasonable amount, and for any additional relief this Court deems just and proper.

## COUNT VI -- INDEMNIFICATION CLAIM
### CITY OF CHICAGO

71.     Each paragraph of this Complaint is incorporated as if restated fully herein.

72.     At all relevant times, CITY OF CHICAGO was the employer of Defendants HARAN and SPYKER.

73.     Defendants HARAN and SPYKER committed the acts alleged above under color of law and in the scope of their employment as employees of the CITY OF CHICAGO.

74.     Illinois law provides that governmental entities are directed to pay any tort judgment for any damages for which employees are liable within the scope of their employment activities.

WHEREFORE, should either or both Defendants HARAN and SPYKER be found liable on one or more of the claims set forth above, the Plaintiff, MARTESA LEE, demands that, pursuant to Illinois law, Defendant CITY OF CHICAGO be found liable for any judgment plaintiff obtains against Defendants HARAN and/or SPYKER, as well

as attorney's fees and costs awarded, and for any additional relief this Court deems just

and proper.


**DATED:**    May 11, 2020


                                        Respectfully submitted,


                              By:      /s/ Jordan Marsh
                                       Attorney for Plaintiff

**LAW OFFICE OF JORDAN MARSH**
55 East Monroe Street, Suite 3800
Chicago, IL 60603
(312) 401-5510
jordan@jmarshlaw.com
Atty # 6216489