# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| MARTESA LEE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20 CV 1508 |
| v. | ) | |
| | ) | Hon. John J. Tharp, Jr. |
| CITY OF CHICAGO, a municipal | ) | |
| corporation, Chicago Police Officer | ) | Mag. Judge Jeffrey Cummings |
| RAYMOND J. HARAN, and Chicago | ) | |
| Police Sergeant WILLIAM J. SPYKER, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT CITY OF CHICAGO'S MOTION FOR PROTECTIVE ORDER TO BAR THE DEPOSITION OF COPA CHIEF ADMINISTRATOR SYDNEY ROBERTS

Defendant City of Chicago ("the City"), by and through its attorney, Mark A. Flessner, pursuant to Federal Rule of Civil Procedure 26(c), hereby moves for a protective order to bar the deposition of Sydney Roberts, Chief Administrator of the City's Civilian Office of Police Accountability ("COPA")(herein, "Chief Roberts").

## BACKGROUND

This case arises from a February 4, 2020 incident in which Defendants Haran and Spyker arrested Plaintiff, an employee of the Chicago Transit Authority, and held her in custody for approximately eight minutes before releasing her. Plaintiff had walked through the crime scene of a stabbing at the CTA's Jackson Red Line stop and did not respond to Haran's repeated commands to get out of the crime scene. Shortly thereafter, Plaintiff approached Spyker to complain that Haran had pushed her. Plaintiff claims Defendants then arrested her without probable cause as retaliation for complaining that Haran had pushed her. (*See*, generally, Plaintiff's First Amended Complaint, Dkt. 12). Haran and Spyker deny they lacked probable cause, deny that Haran pushed her, and deny that Spkyer retaliated against Plaintiff due to her complaint that Haran pushed her.

1

The aforementioned incident was captured on the body-worn cameras of Defendants Haran and Spyker. Discovery is on-going and the parties have all been deposed.

On February 10, 2020, Plaintiff made a formal complaint about Haran and Spyker to COPA and COPA initiated an investigation into the incident under Log No. 2020-630. COPA's investigation is currently open and ongoing. On June 16, 2020, COPA issued a memo to Chicago Police Department Superintendent David Brown recommending that he consider temporarily relieving Sgt. Spyker of his police powers during the pending investigation. (*See* 6/16/20 Memo from COPA to Sup. Brown, attached as Ex. A). The memo, signed by Chief Roberts, references the body-cam footage of the incident and expresses the importance of a person's ability to lodge complaints of police misconduct. The memo also states:, "[a]t this point in COPA's investigation, strong evidence suggests that Sgt. Spyker's handling of Lee's complaint may have been in violation of Department policy regarding the treatment of received complaints of misconduct." (Ex. A, p. 1). The memo concludes by inviting Superintendent Brown to contact Deputy Chief Investigator Andrea Kersten to discuss the matter or to field questions. (Ex. A, p. 2). The 6/16/20 COPA Memo is the reason Plaintiff now seeks the deposition of Chief Roberts.[1]

The City moves for a protective order to bar the deposition of Chief Roberts pursuant to the apex doctrine and Rule 26(b)'s scope of discovery limitations. As discussed below, Chief Roberts is the top official of COPA, does not have any unique or specific knowledge of the facts relating to the incident or the COPA investigation, and forcing the City having to commit the top official of COPA to a deposition is not proportional to the needs of this case and sets an untenable precedent.

---

[1] On September 9, 2020, Plaintiff noticed up the deposition of Chief Roberts.. (*See* 9/9/20 Notice of Deposition, attached as Ex. B).

## 37.2 COMPLIANCE

The parties have conferred in good faith to resolve this dispute short of court intervention but unfortunately Plaintiff insists on Chief Roberts' deposition. When Plaintiff noticed Chief Roberts' deposition, defense counsel inquired why Plaintiff sought Chief Roberts' deposition. (*See* e-mail exchange, attached as Ex. C). On September 15, 2020, the parties engaged in a 37.2 teleconference and Plaintiff's counsel subsequently wrote a letter summarizing Plaintiff's position on why Chief Roberts' deposition was necessary. (*See* Plaintiff's 9/15/20 37.2 letter, attached as Ex. D). In summary, Plaintiff contends she is entitled to depose Chief Roberts for two reasons: (1) because she sent the 6/16/20 COPA Memo, and (2) because she could provide "helpful context" about the problem with officers arresting civilians who complain about them. (Ex. D at p. 3). On September 29, 2020, the City responded in writing to Plaintiff's letter outlining why Chief Roberts' deposition should not proceed. (*See* City's 9/29/20 37.2 letter, attached as Ex. E.). On October 1, 2020, Plaintiff's counsel sent a second letter disagreeing with the City's position and declining to withdraw the deposition notice. (*See* 10/1/20 Plaintiff's 37.2 response letter, attached as Ex. F). Finally, on October 5, 2020, counsel for the parties conferred in a second 37.2 teleconference wherein the City discussed its position set forth in its 37.2 letter and the arguments set forth in this brief, including offering alternative means to obtaining the information Plaintiff sought other than deposing COPA's top official. Plaintiff respectfully declined to withdraw the deposition notice and invited the City to seek relief in Court. Consequently, the City now brings this motion for a protective order barring Chief Roberts' deposition.

## LEGAL STANDARD

Rule 26(c) provides that protective orders may address "matters relating to a deposition" and that a court issue may bar a deposition of high ranking officials where appropriate. *See*, *e.g.*,

*Little v. JB Pritzker*, 2020 WL 868528, *1 (N.D. Ill. Feb. 21. 2020). Rule 26(b) limits the scope of discovery to "nonprivileged matter that is relevant to any party's claim or defense and must be "proportional to the needs of the case." Fed. R. Civ. P. 26(b). Courts may for "good cause" issue a protective order on matters relating to discovery including the availability of deposition testimony, to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense." *See* Fed. R. Civ. P. 26(c)(1); *United States ex rel. Baltazar v. Warden*, 302 F.R.D. 256, 259 (N.D. Ill. 2014). Moreover, the Seventh Circuit has long recognized that "depositions of public officials create unique [and added] concerns." *Stagman v. Ryan*, 176 F.3d 986, 994–95 (7th Cir. 1999). Thus, "[b]efore the involuntary depositions of high-ranking government officials will be permitted, the party seeking the depositions must demonstrate that the particular official's testimony will likely lead to the discovery of admissible evidence and is essential to the party's case." *Warzon v. Drew*, 155 F.R.D. 183, 185 (E.D. Wis. 1994).

Courts have repeatedly rejected the attempts to depose public officials based upon matters on which a plaintiff has not shown specific, actual, and unique knowledge regarding the claims at issue. *See*, *e.g.*, *Olivieri v. Rodriguez*, 122 F.3d 406, 409-410 (7th Cir. 1997) (denying plaintiff's request to depose superintendent of police); *Stagman*, 176 F.3d at 994-95 (upholding district court's decision prohibiting the Illinois Attorney General's deposition); *Hudkins v. City of Indianapolis*, No. 1:13-cv- 01179-SEB-DML, 2015 WL 4664592, *6-7 (S.D. Ind. Aug. 6, 2015) (granting motion to quash deposition of police chief); *Cannon v. Burge*, 2007 WL 2410392, *2-3 (N.D. Ill. 2007) (denying plaintiff's motion to compel mayor's deposition); *Chicago Reader, Inc. v. Sheahan*, 192 F.R.D. 586 (N.D. Ill. 2000) (rejecting plaintiff's attempt to depose sheriff); *See also Lederman v. New York City Dept. of Parks & Recreation*, 731 F.3d 199, 204 (2d Cir. 2013) (affirming protective order barring deposition of mayor of New York City); *Bogan v. City of*

4

*Boston*, 489 F.3d 417, 423 (1st Dist. 2007) (affirming protective order barring deposition of Mayor of Boston); *Hankins v. City of Philadelphia*, No. 95-1449, 1996 WL 524334 (E.D. Pa. Sept. 12, 1996), at *1-2 (denying plaintiff's request to compel deposition of mayor of Philadelphia).

## ARGUMENT

### I. The Deposition Chief Roberts Should Be Barred by the Apex Doctrine.

Under the "apex doctrine," a high-ranking official should not be subject to the burdens of civil deposition testimony when any one of the following circumstances exist: (a) the official has no unique knowledge of the matter in dispute; (b) the information sought from the official can be obtained from another witness or source; or (c) the deposition would be a severe hardship for the official in light of her obligations to her office. *EchoStar Satellite, LLC v. Splash Media Partners, L.P.*, No. 07-cv-02611-PAB-BNB, 2009 WL 1328226, *2 (D. Colo. May 11, 2009); *accord Hudkins*, 2015 WL 4664592 at *7 ("In order to shield high-ranking public officials from an excessive and unmanageable volume of subpoenas for their testimony, courts have required a party seeking such testimony to demonstrate that the official has personal knowledge of matters directly relevant to claims and defenses that cannot be obtained from other, more convenient sources."). Here, all of these "apex doctrine" factors are present with respect to Chief Roberts.

**A. Chief Roberts Does Not Possess Unique or Specific Knowledge to this Incident or the COPA Investigation.**

The 6/16/20 COPA Memo signed by Chief Roberts reflects COPA's preliminary view of the incident and recommendation that Superintendent Brown consider relieving Sgt Spyker of his police powers pending the COPA investigation. Chief Roberts may have signed the memo but she is not the person most knowledgable about the investigation and Plaintiff knows it. Rather than establishing any fact at issue, Plaintiff wants Chief Roberts to testify as to why it is important for police officers to not retaliate against citizens for lodging complaints of police misconduct and to

5

explain why COPA made the recommendation it did in the memo. The memo states in relevant part, "A civilian's ability to lodge a complaint of police misconduct is of paramount importance in the Department's efforts to rebuild trust with the community. To have a sergeant of police not only ignore Ms. Lee's request to file a complaint, but to respond by using his arrest powers in a seemingly punitive and retaliatory manner demonstrates a profound lack of judgment and brings significant discredit to the Department." Ex. A at pp. 1-2. However, Chief Roberts does not possess "unique knowledge" as to either point. First, Chief Roberts does not have any personal or independent knowledge of the facts or circumstances of what transpired between Lee, Haran, and Spyker. Her lack of personal knowledge alone is ground enough for barring her deposition. See *Berning v. UAW Local 2209*, 242 F.R.D. 510, 512 (N.D. Ind. 2007)(citing extensive case law that considers a deponent's lack of personal knowledge as a factor that limits or bars his deposition).

Second, whatever content set forth in the 6/16/20 COPA Memo is self-explanatory and, more importantly, not specific or unique to Chief Roberts. The memo reflects COPA's concerns and a recommendation (preliminary at that) based on its review of bodyworn camera footage of the incident. It concludes by inviting Sup. Brown to discuss the issue, if he desired, with Deputy Chief Investigator Kersten of COPA. Chief Roberts is not the lead investigator of the incident, is not acting indepdently of COPA, or expressing her personal opinion. Her execution of the 6/16/20 Memo is done in her capacity as COPA's top official and in signification of COPA's assessment of the body-cam footage as reflected in the memo. The importance of police officers, and in particular police supervisors, following proper procedure when citizens seek to lodge complaints is not a particularly novel issue, and it certainly is not one that COPA's top official need be deposed to illuminate in discovery in this case. Even assuming the memo lays out opinions about Spyker's actions, the need to depose Chief Roberts is completely unwarranted.

### B. The Information Plaintiff Seeks Through The Deposition of Chief Roberts Could Be Obtained By Less Intrusive Means.

The "apex doctrine" further cautions against the Court permitting the deposition of persons in Chief Roberts' position because any information Plaintiff might be seeking from her could be obtained through means that would be far less intrusive to the responsibilities of this high-ranking government official. First, the best evidence about the underlying incident beyond the bodyworn camera the is the deposition testimony of Plaintiff, Defendants Haran and Spyker, which is testimony that has already been procured. Second, to the extent that the issue of COPA's investigation or recommendations might be relevant, evidence on those subjects will available through the official COPA and CPD documents addressing these matters. The 6/16/20 COPA memo speaks for itself. The City will obviously stipulate to its authenticity.. Further, if Plaintiff needs to shore up proof of internal discipline evidence at trial, Plaintiff could establish it in a variety of ways that do not require a deposition from Chief Roberts. The deposition of the COPA investigator who actually handled the matter and who concluded that rules violations had occurred and that discipline was warranted would be the appropriate person. Further, Plaintiff can issue requests for admission confirming the findings. The City could designate a 30(b)(6) witness, if necessary, to address the issue. Plaintiff could issue interrogatories to the City. In fact, the City offered to answer interrogatories directed to this issue or suggested a limited deposition on written questions but Plaintiff rejected the City's offer. In sum, there are a mulittude of discovery vehicles available to Plaintiff, even assuming the scope and purpose of the information sought satisfies Rule 26(b)'s standard. A deposition of Chief Roberts is simply unnecessary.

**C. A Deposition of Chief Roberts Would Impose An Unwarranted Hardship Upon The City And The Public.**

Chief Roberts runs COPA, an organization of approximately 150 employees dedicated to various tasks centered around investigating complaints of police misconduct in areas ranging from excessive force to domestic violence to illegal search. Ms. Roberts manages this agency's $13 million budget and is responsible for the overall operation of the organization, including addressing numerous reporting requirements to the Independent Monitoring Team to ensure the City's compliance with the Consent Decree. Those matters include ensuring investigations are completed in as timely a fashion as possible, compiling and reporting statistics about police misconduct complaints,, and developing programs to reconcile issues between officers and members of the public. In addition to her day to day duties, she oversees educating city officials and members of the public about a wide variety of issues pertaining to police accountability. Chief Roberts also coordinates her staffers' response to scenes at officer-involved shootings and other major incidents that could involve potential police misconduct. She personally responds to some such scenes. Such incidents can happen at unpredictable intervals around the clock, with no regard to any other items on her schedule. Her duties and responsibilities are specifically earmarked to the public at largen including balancing the right of the public to know about individual investigations with the rights of accused officers. These responsibilities have never been more crucial and demanding than now, given current events.

Here, Plaintiff's legitimate need for Chief Roberts's deposition is practically nonexistent. Instead, Plaintiff wants to use Chief Roberts' stature and rank to highlight that the issues raised in her complaint are important and, as such, her complaint warrants serious consideration. That is not a proper basis for the deposition of a top official and, while the issues raised in her complaint are indeed important, the need for a deposition from Chief Roberts to confirm that is decidedly

outweighed by the burden a civil deposition would pose to the City, Chief Roberts, and the public. To sit for a deposition, Chief Roberts would have to set aside her present duties to meet with counsel and staff to prepare. She would have to commit time for the deposition that under the rules could last as many as seven hours.

Further, discovery regarding the reasoning behind COPA's decision-making process, and in particular Chief Roberts' executive actions, might impinge on the deliberative process privilege and the investigative privilege. *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993) ("Since frank discussion of legal and policy matters is essential to the decision making process of a governmental agency, communications made prior to and as a part of an agency determination are protected from disclosure."). As to the investigative privilege, the City and COPA have an interest in preserving the confidentiality of an ongoing investigation and in being able to assess the evidence, deliberate, and revise preliminary conclusions without fear of premature disclosure." *Santiago v. City of Chicago*, 2010 WL 1257780 at *4, No. 09 C 3137 (N.D.Ill. March 26, 2010) (citing *Lewis v. City of Chicago*, 2004 WL 2608302 at *3 (N.D.Il.. Nov. 16, 2004). Even if the Court would require Chief Roberts to sit for a deposition, it would likely result in further court intervention to decide issues of deliberative and investigative privilege.[2] In addition to being deposed, Chief Roberts would likely too have to eventually testify as a trial witness, a requirement that would take her away from her official duties to devote the time and preparation needed for trial. Further, Plaintiff's request for the deposition comes at a time when Chief Roberts is deeply involved in the end-of-the-year budgeting process, preparing to make the case to the City Council that COPA should receive funds sufficient to carry out its many mandates during a time of an unprecedented budget crunch. Any time needed for a deposition would seriously, and unjustifiably,

---

[2] It is also possible that, depending on the questions, the attorney-client privilege and other privileges might apply.

9

detract from her responsibilities at Chief Administrator of COPA. This severe hardship consideration is yet another reason why the Court should grant a protective order with respect to the deposition Plaintiff seeks. *See Olivieri*, 122 F.3d at 409-410 ([S]uch officials "should not be taken away from [their] work to spend hours or days answering lawyers' questions unless there is real need.").

**II. Deposition Testimony From Chief Roberts Is Not Relevant or Proportional to the Needs of this Case.**

Federal Rule of Civil Procedure 26(b)(1) states that parties may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Relevance "focues on the claims and defenses in the case, not its general subject matter. Proportionality analysis involves consideration of various factors, including the importance of the issues at stake, the amount in controversy, the parties' relative access to information, the parties' resources, the importance of the discovery in resolving the issue, and whether the burden or expense of the proposed discovery outweighs the likely benefit." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.,* 365 F.Supp.3d 916, 924 (N.D.Ill. March 15, 2019) The discovery Plaintiff is seeking from Chief Roberts is not relevant to any party's claims or defenses, and the efforts to obtain it are not proportional to the needs of the case. Therefore, a protective order is appropriate.

Here, the central issues center on what happened between the parties and whether the actions taken by Haran and/or Spyker violated Plaintiff's constitutionally protected rights. Liability will turn on whether probable cause to arrest Plaintiff for an offense existed and whether Plaintiff was arrested as retaliation for her making a complaint to Spyker that Haran pushed her. Chief Roberts does not have any first-hand knowledge related to any of those issues. The 6/16/20 COPA Memo, as discussed above, is not exclusive to Chief Roberts about what the body-cam

footage shows or whetherSup. Brown should temporarily relieve Spyker of police powers. Even assuming that COPA ultimately finds that Spyker engaged in misconduct and recommends discipline for him, it is not necessary that Chief Roberts be deposed to establish this fact. Whether Spyker violated CPD orders and any corresponding discipline that might be imposed is largely not relevant. *See Thompson v. City of Chicago,* 472 F.3d 444, 455 (7th Cir. 2006) ("[T]he violation of police regulations or even a state law is *completely immaterial* as to the question of whether a violation of the federal constitution has been established."). In any event, COPA's investigation is not concluded and presently open; any testimony related to the 6/16/20 COPA Memo would necessarily be qualified.

Even if the 6/16/20 COPA Memo were somehow relevant and admissible for some limited purpose, the Court must consider whether the efforts to obtain that information from Chief Roberts are proportional to the needs of the case. The 2015 amendments to Rule 26 emphasize, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed.R.Civ.P. 26 Advis. Comm. Notes for 2015 Amendments. "Proportionality, like other concepts, requires a common sense and experiential assessment." *Gross v. Chapman*, 2020 WL 4336062 at *3, No. 19 C 2743 (N.D.Ill. July 28, 2020). Common sense dictates that the deposition of COPA's top offical to vet the 6/16/20 COPA Memo is not proportional to the needs of this case. The incident itself is captured on video, which means that the underlying facts are largely beyond dispute. It involves a verbal exchange between Plaintiff, Haran and Spyker, followed by a detention of approximately eight minutes. Plaintiff makes no claim of physical injuries. A jury can readily discern from that video what occurred. Moreover, the parties have already given depositions to elaborate on any points that might be unclear from the video. The 6/16/20 COPA Memo, the stated basis for Plaintiff's deposition, does

not help to resolve any issue that the bodyworn camera video and the parties' testimony would not. The information contained in the 6/16/20 COPA Memo plainly relates to observations and opinions derived from the body camera footage and do not require elaboration. Moreover, there is little reason to command Chief Roberts herself sit for a deposition and elaborate on what is plainly set forth in the memo. And as discussed throughout this brief, the burden that this deposition would place on Chief Roberts and the City greatly outweighs whatever small benefit Plaintiff could hope to extract from it. This is exemplary of why her deposition is not proportional to the discovery needs of the case. Plaintiff's claim about the necessity of Chief Roberts's deposition rings hollow.

### III. Requiring Chief Roberts Sit for a Deposition Would Set An Untenable Precedent.

Requiring Chief Roberts to sit for a deposition sets an untenable precedent as she in theory would be required to sit for a deposition in any case involving allegations of police misconduct wherein COPA's jurisdiction is invoked. According to Plaintiff, Chief Roberts' expertise would be helpful to the jury to undertand that the police misconduct Plaintiff complains of is a serious issue. Plaintiff's logic is that Chief Roberts' deposition is necessary for the jury to understand the gravity and seriousness of her claims. Not so and, moreover, not a sufficient basis to command a deposition from COPA's top official. To hold otherwise subordintes COPA to the discovery process any time a disciplinary concern is even raised and potentially sets a precedent that would necessitate Chief Roberts' deposition in every civil rights case. Moreover, as Plaintiff concedes, the purported reason for the deposition is not to establish any of the facts or circumstances of the case, or even COPA's investigation into the incident, but rather to have COPA's top official point out that police misconduct is an important issue to be taken seriously.

To reiterate, the underlying incident in this case is relatively straightforward and is entirely captured on video, Chief Roberts has no unique knowledge about it, and the 6/16/20 COPA Memo – which is not the final conclusion of COPA in its ongoing investigation -- speaks for itself. If under these circumstances she should be required to sit for a deposition, there is no limit to the number of depositions Chief Roberts could be subject to. In any case that COPA makes a recommendation for discipline or not– which is to say, essentially every case of alleged police misconduct – Chief Roberts ultimately will approve her agency's recommendation as to what discipline, if any, is appropriate. She therefore could be called by virtually any civil-rights plaintiff to testify as a de facto expert in the importance of investigating police misconduct, what opinions she holds as to the incident, what COPA's decisions are, how each decision was formed, the investigative steps her subordinates took or did not take and so forth. She could similarly be called by any defendant officers to provide evidence that her agency has exonerated them or to launch a collateral attack on any adverse findings. Moreover, if Plaintiff's view were to prevail, it would be appropriate to have Chief Roberts sit for any such deposition even before her agency has made a final finding.

To impose a requirement that she potentially testify, including providing her personal opinions, in every case COPA investigates would seriously detract from the time she needs to devote to her primary duties. Worse, it could have a chilling effect as to how she and her agency perform those primary duties. The knowledge that each and every case decision or action might result in a deposition of her in civil litigation relating to the incident COPA is investigating has the potential to shape how Chief Roberts, her staff, and future officials in her position operate, investigate, and make recommendations in cases of alleged police misconduct.

**IV. Alternatively, Good Cause Exists for a Protective Order Limiting Plaintiff to the Submission of Questions in Writing, Or, If A Deposition Is Permitted, Limiting Its Scope And Duration.**

In the event the Court does not bar Chief Roberts' testimony, the City moves in the alternative for a protective order requiring Plaintiff to tender a limited set of interrogatories to be answered in writing. Alternatively, to the extent that a deposition is permitted, its scope should be carefully tailored so as not to infringe upon the investigative privilege and the deliberative process privilege, and, if oral, be limited in time. Given the limited information set forth in the 6/16/20 COPA Memo, the demands on Chief Roberts, and the stated purpose Plaintiff seeks Chief Roberts' deposition, the City requests that Plaitniff be limited to no more than one hour for her deposition.

## CONCLUSION

For the reasons stated above, the City respectfully requests that this Court enter a protective order barring the deposition of Chief Roberts. Alternatively, the City requests that this Court enter a protective order limiting Plaintiff to submitting questions in writing or, if a deposition is required, limiting its time and scope as set forth above.

DATED: October 9, 2020                                    Respectfully submitted,

                                                         MARK A. FLESSNER
                                                         Corporation Counsel for the City of Chicago

                                                         **BY:**    */s/ Raoul Vertick Mowatt*
                                                                      Raoul Vertick Mowatt
                                                                      Assistant Corporation Counsel III

Christopher Wallace, Chief Assistant Corporation Counsel
Stephanie A. Sotomayor, Assistant Corporation Counsel III
City of Chicago, Department of Law
Federal Civil Rights Litigation Division
30 N. LaSalle Street, Suite 900
Chicago, Illinois 60602
D: 312.744.3283 (Mowatt)

F: 312.744.6566
raoul.mowatt@cityofchicago.org

## **CERTIFICATE OF SERVICE**

I, the undersigned attorney, hereby certify that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which sent electronic notification of the filing on the same day to all counsel of record.

/s/ *Raoul Vertick Mowatt*
Raoul Vertick Mowatt